IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


JOSEPH PAUL LOWERY,
      Petitioner,

vs.                                Case No.: 3:04cv311/RV/EMT

JAMES R. McDONOUGH,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254, supporting memorandum, and supplemental brief (Docs. 14, 16). Respondent filed an answer and relevant portions of the state court record (Docs. 33, 34). Petitioner filed a reply (Doc. 38).

This matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for disposition of this matter. *See* Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The procedural background of this case is undisputed by the parties and established by the state court record. On December 14, 2000, in the Circuit Court for Santa Rosa County, Florida, Petitioner pleaded nolo contendere, pursuant to a written plea agreement, to forty-six (46) felony counts and one misdemeanor count in nineteen (19) cases (case numbers 00-62 through 00-80) (Doc.

34, Ex. A at 136-43).[1]  Additionally, Petitioner pleaded nolo contendere, pursuant to a written plea agreement, to one count of escape in case number 00-274 (*id*. at 144-48).  The same day, Petitioner was adjudicated guilty of all counts and sentenced as a habitual felony offender to fifty years imprisonment on the life felonies, thirty years on the first degree felonies, fifteen years on the second degree felonies, and five years on the third degree felonies (*id*. at 150-69).  He was sentenced to thirty years on the escape charge (*id*.).  All sentences were ordered to run concurrent to each other but consecutive to a sentence he received in Louisiana (*id*.).

Petitioner appealed his convictions and sentences to the Florida First District Court of Appeal (First DCA).  Petitioner's appellate counsel filed a brief asserting that counsel was unable to make a good faith argument that reversible error occurred in the trial court, in accordance with Anders v. California, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967) (Doc. 34, Ex. B).  The appellate court affirmed the convictions and sentences per curiam without opinion on May 22, 2002, with the mandate issuing July 26, 2002 (Doc. 34, Ex. E).  Lowery v. State, 821 So. 2d 1060 (Fla. 1st DCA May 22, 2002) (Table).  On July 18, 2002, Petitioner filed an application for writ of certiorari with the Florida Supreme Court (Doc. 34, Ex. G).  The state supreme court dismissed the petition for lack of jurisdiction on August 19, 2002 (Doc. 34, Ex. H).  Lowery v. State, 825 So. 2d 935 (Fla. Aug. 19, 2002) (Table).

On May 15, 2003, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 34, Ex. I at 1-46).  The motion was denied on July 14, 2003 (*id*. at 47-115).  The next day, on July 15, 2003, Petitioner filed a motion to amend his Rule 3.850 motion (*id*. at 116-44).  On July 28, 2003, Petitioner filed a motion for rehearing of the order denying his original motion (*id*. at 145-55).  The trial court considered Petitioner's supplemental claims and the motion for rehearing, and denied them on August 18, 2003 (*id*. at 156-68).  Petitioner appealed the decision to the First DCA, and the First DCA affirmed the decision per curiam without opinion on April 5, 2004, with the mandate issuing May 3, 2004 (Doc. 34, Exs. K, L).  Lowery v.

---

[1]The felony counts included home invasion robbery, possession of a firearm by a convicted felon, aggravated assault with a firearm, armed burglary of a dwelling, grand theft, grand theft auto, burglary of an unoccupied dwelling, and dealing in stolen property (Doc. 34, Ex. A at 59-87, 94-95, 141-43).  The degrees of the felonies included life, first degree, second degree, and third degree.

State, 871 So. 2d 881 (Fla. 1st DCA Apr. 5, 2004) (Table).  Petitioner sought certiorari review by the Florida Supreme Court, but the state supreme court dismissed the petition for lack of jurisdiction on July 14, 2004 (Doc. 34, Ex. M).  Lowery v. State, 880 So. 2d 1211 (Fla. July 14, 2004) (Table).

Petitioner filed the instant habeas action on September 1, 2004 (Doc. 1 at 8).

II.      STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States."  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.

Section 2254 now provides:

(d)      An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
  (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
  (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test in habeas cases was described by Justice O'Connor as follows:

---

[2]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-375, 390-399, 120 S.Ct. at 1499-1503, 1511-1516); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and —except as to the footnote – Scalia) in part II (529 U.S. at 403-413, 120 S.Ct. at 1518-1523).  The opinion of Justice Stevens in Part II was joined by Souter, Ginsburg, and Breyer.

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13; Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119-20, 147 L. Ed. 2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding.  *See* Wellington v. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343-45 (11th Cir. 2002).  First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication.  Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343.  Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law.  Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344.  "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the relevant Supreme Court precedent."  Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), *cert. denied*, 535 U.S. 1104, 122 S. Ct. 2310, 152 L. Ed. 2d 1065 (2002) (quoting Williams, 529 U.S. at 405)).  "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law."  Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at

404-06).  If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority." Fugate, 261 F.3d at 1216.  Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." *Id.* (citing and quoting Williams, 529 U.S. at 406).  A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 410.  The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (quoting Williams, 529 U.S. at 411).  Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003).  A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that that [the state court] judgment is infected by constitutional error." Williams, 529 U.S. at 389.  "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004) (citation omitted).  Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look

to circuit precedent to demonstrate reasonable applications of Supreme Court precedent. <u>Van Poyck v. Fla. Dep't of Corrections</u>, 290 F.3d 1318, 1322 n.4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence."  Section 2254(e)(1); *see* <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." (dictum)); <u>Fugate</u>, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); <u>Parker v. Head</u>, 244 F.3d 831, 835-36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); *see also* <u>Crawford v. Head</u>, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations).  Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence. *See* <u>Callahan v. Campbell</u>, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1308 (11th Cir. 2004) (concluding that "[petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record")).

## III.   EXHAUSTION AND DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving

---

[3]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
    (A)  the applicant has exhausted the remedies available in the courts of the State; or
    (B) (i)  there is an absence of available State corrective process; or
        (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .

the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365-66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. In Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. Id. 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7 (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim

---

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

merely because the defendant in the <u>cited</u> case advanced a federal claim.  *Id.*, 459 U.S. at 7 and n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in <u>Duncan v. Henry</u>, 513 U.S. 364.  The <u>Duncan</u> Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  <u>Duncan</u>, 513 U.S. at 365-66.   Recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  <u>Baldwin v. Reese</u>, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). The <u>Baldwin</u> Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  *Id.*  With regard to this statement, the Eleventh Circuit stated in <u>McNair v. Campbell</u>, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" <u>McNair</u> [<u>v. Campbell</u>], 315 F. Supp. 2d at 1184 (quoting <u>Vasquez v. Hillery</u>, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This

---

[4]The petitioner in <u>Duncan</u> raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

is consistent with settled law established by the Supreme Court. . . . We therefore
hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than
scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[5]

An issue that was not properly presented to the state court and which can no longer be
litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred
from federal review.  Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999).  This court will also
consider a claim procedurally defaulted if it was presented in state court and rejected on the
independent and adequate state ground of procedural bar or default.  See Coleman v. Thompson, 501
U.S. 722, 734-35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore,
269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted
under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324,
1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even
as to a claim which has never been presented to a state court); accord Tower v. Phillips, 7 F.3d 206,
210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), rev'd on other grounds, 498
U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must
determine whether any future attempt to exhaust state remedies would be futile under the state's
procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must
determine whether the last state court rendering judgment clearly and expressly stated its judgment
rested on a procedural bar.  Id..  A federal court is not required to honor a state's procedural default
ruling unless that ruling rests on adequate state grounds independent of the federal question.  See
Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of
a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v.
Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The Eleventh Circuit has set

---

[5]In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation
containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by
the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and
Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v.
Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient
to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the
federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  Id.

forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[6] Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. Id. The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. Id.

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. Tower, 7 F.3d at 210. To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

Id.

---

[6]The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

    A.    <u>Ground one:  The trial court violated petitioner's constitutional rights by failing to properly Boykinize [sic] petitioner.</u>

(Doc. 14 at 4).  Petitioner contends that the trial court failed to conduct a proper inquiry to determine whether his pleas were knowing and voluntary (*id.*).  Within this ground, Petitioner raises three sub-claims:  (1) the trial court failed to advise him of the rights he was waiving by entering the pleas, including the right to a trial by jury, (2) the trial court failed to advise him of the mandatory minimum sentence for each offense, as required by Rule 3.172(C)(1) of the Florida Rules of Criminal Procedure, including a 10-year mandatory minimum sentence for the home invasion robbery charge, and (3) the trial court failed to require that the record contain a factual basis for Petitioner's pleas (Doc. 14, supporting memorandum at 4-7; Doc. 38 at 4-7).

    1.    Clearly Established Supreme Court Law

The test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to a defendant.  <u>North Carolina v. Alford</u>, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970) (citing <u>Boykin v. Alabama</u>, 395 U.S. 238, 242, 89 S. Ct. 1709, 1711, 23 L. Ed. 2d 274 (1969)).  A plea of guilty is not considered knowing and voluntary unless the accused is reasonably informed of the nature of the charge against him, the factual basis underlying the charge, and the legal options and alternatives that are available.  *See* <u>Henderson v. Morgan</u>, 426 U.S. 637, 645, 96 S. Ct. 2253, 2258, 49 L. Ed. 2d 108 (1976); <u>Stano v. Dugger,</u> 921 F.2d 1125, 1142 (11th Cir. 1991) (citations omitted).  This includes that the defendant be informed regarding the range of punishment that he might receive.  <u>Pardue v. Burton</u>, 26 F.3d 1093, 1096 (11th Cir. 1994) (citing <u>Boykin</u>, 395 U.S. at 241-42).  The accused must also knowingly waive constitutional rights to which he would otherwise be entitled, "including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers."  <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); *see also* <u>Boykin</u>, 395 U.S. at 243 & n.5.  "A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving or because he has such an

incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." <u>Morgan</u>, 462 U.S. at 645 n. 13 (citation omitted); <u>Boykin</u>, 395 U.S. at 243 & n.5.

        2.      Federal Review of State Court Decision

Respondent contends that Petitioner did not fairly present all of his sub-claims to the state courts (Doc. 33 at 11-17). Respondent argues that the only claims fairly presented by Petitioner were his claims that the trial court failed to conduct a proper inquiry under <u>Boykin</u>, and the trial court failed to comply with the Florida procedural rule requiring that Petitioner be advised of the mandatory minimum sentences (*id*. at 11-16). Respondent further contends that Petitioner is now procedurally barred from raising his other claims in the state court (*id*. at 16-17).

Upon review of the state court record, the undersigned concludes that Petitioner raised only the following sub-claims in his Rule 3.850 motion: the trial court's failure to inform him of the mandatory minimum sentences, and the trial court's failure to inform him that he would be waiving his right to trial by jury by entering a plea (Doc. 34, Ex. I at 10-11, 126-29). Petitioner did not raise the issue of the trial court's failure to inform him of any other rights he would be waiving; indeed, Petitioner specifically conceded in his Rule 3.850 motion that the trial court advised him that he would be waiving his right to confront adverse witnesses and his privilege against self-incrimination (*id*. at 126). Likewise, Petitioner did not raise the issue of the trial court's failure to ensure that the record contained a factual basis for Petitioner's pleas.[7]

Furthermore, any attempt by Petitioner to now raise the unexhausted claims in the state courts would be procedurally barred. Rule 3.850(f) of the Florida Rules of Criminal Procedure provides, in relevant part:

> (f) **Successive Motions**. A second or successive motion may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the movant or the attorney to assert those grounds in a prior motion constituted an abuse of the procedure governed by these rules.

---

[7]Despite Petitioner's failure to exhaust this claim, the claim is without merit. The plea agreement signed by Petitioner expressly provided that by signing the agreement, Petitioner agreed that the arrest reports that were filed with the court were incorporated by reference into the plea agreement and provided a factual basis for the plea (Doc. 34, Ex. A at 138, 3-55). Additionally, during the plea colloquy, the judge found that there was a sufficient factual basis for the plea (*id*. at 249).

This rule has been consistently interpreted by the Florida courts as requiring a defendant to raise all grounds for post-conviction relief in his first 3.850 motion, unless the new grounds raised in a subsequent motion are fundamentally different in nature.  *Compare* <u>Spaziano v.  State</u>, 545 So.2d 843, 844 (Fla. 1989) (second 3.850 motion must be summarily denied where first motion raised claim of ineffective assistance of counsel, second motion sought to raise additional grounds for that ineffectiveness, and second motion did not allege defendant was precluded from asserting the additional grounds in the first motion), *and* <u>Washington v. State</u>, 876 So.2d 1233, 1234 (Fla. 5th DCA 2004) (petition for habeas corpus properly denied as successive 3.850 motion and thus abuse of process where defendant previously filed 3.850 motion asserting several grounds of ineffective assistance of counsel and either re-stated same issues in habeas petition or asserted grounds which could or should have been addressed in previous 3.850 motion), *with* <u>McDowell v. State</u>, 714 So.2d 606, 606-07 (Fla. 4th DCA 1998) (claims raised in second 3.850 motion were sufficiently disparate from prior motion to overcome doctrine of successiveness where first motion challenged existence of a law forbidding possession of cocaine with intent to sell and also challenged whether escape charge had been properly drafted, and second motion sought to withdraw guilty plea on ground that defendant was under influence of psychotropic drugs and also challenged factual basis for plea), *and* <u>Williams v. State</u>, 685 So.2d 1317, 1318(Fla. 2d DCA (1996) (claims raised in second 3.850 motion were disparate in nature such that they could be heard despite doctrine of successiveness where first motion attacked irregularities at sentencing, and second motion attacked voluntariness of plea).

Florida courts consistently apply the rule that a successive post-conviction motion which asserts different grounds than a defendant's first motion is successive and an abuse of process unless the defendant shows justification for his failure to raise the new ground in his first postconviction motion, or he shows that the ground raised in the second motion is fundamentally disparate in nature from the grounds in the first motion.  *See* <u>Washington</u>, 876 So.2d at 1234; <u>Spaziano</u>, 545 So.2d at 844-45.  In the instant case, Petitioner has failed to allege cause for his failure to assert his other claims in his first post-conviction motion.  Furthermore, the claims were fundamentally similar in nature to the grounds raised in his first motion, as they were all claims of trial court error in accepting Petitioner's plea.  Therefore, the only claims that are properly before this court are the trial

court's failure to advise Petitioner that he was waiving his right to a trial by jury by entering a plea, and the trial court's failure to advise Petitioner of the mandatory minimum sentences.

As to Petitioner's claim that the trial court failed to advise him that he was waiving his right to a jury trial by entering a plea, the state post-conviction court made the following factual findings: (1) on December 14, 2000, Petitioner signed a written plea agreement which explicitly informed him that by entry of the plea he was giving up the right to trial by jury; (2) Petitioner asserted at the plea hearing that he understood all of the terms of the written plea agreement; (3) Petitioner was explicitly informed of his right to trial by jury by the trial court; and (4) while Petitioner stated at one point that he did not understand the rights he was waiving, the trial court then individually explained each right, and Petitioner affirmatively answered that he understood each right he was waiving (Doc. 34, Ex. I at 157).

Petitioner has failed to present clear and convincing evidence to rebut the state court's factual findings, therefore the findings are presumed correct.  Specifically with regard to Petitioner's claim that the trial court failed to advise him of his right to a jury trial, the following excerpt from the plea and sentencing hearing explicitly refutes Petitioner's claim:

> THE COURT:  And do you understand that you have a right to go to trial on each and every one of these cases?  And at no time can you be made to testify against yourself.  At all times it would be the State's burden to prove each and every element of each and every count of each and every case **to a jury** beyond a reasonable doubt.
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  And Mr. Miller can represent you and confront any witnesses that the State may bring.  And you could call witnesses on your behalf.
> And by entering into this plea you are waiving those rights, and you are waiving any defense that you may have to the charges.  Do you understand that?  And you are basically saying, "I am not contesting the charges against me."
> Do you understand that?
>
> THE DEFENDANT:  Not really.  What we is--
>
> THE COURT:  Let me try to put it.  It is too long of a sentence.
> You know that you have the right to go to trial on each and every one of the charges?

THE DEFENDANT:  Yes.

THE COURT:  And you understand that at the trial the State has to prove the charges against you to a **jury of six people**.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And each case has to be tried separately unless we all agree that one or two or more would be tried together.
Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT: And do you understand at the trial that you could not be made to testify against yourself?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand that Mr. Miller would be able to confront and challenge anything that the State's witnesses may say?  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  And do you understand that you could call witnesses at the trial to represent you?

THE DEFENDANT:  Yes, sir.

THE COURT:  And then let's say that we went to trial on the cases and you were found guilty.  You could appeal your guilt or innocence on the charges, and what happened at trial to an appellate court who would review everything.  And by entering into this plea you will not have a right to appeal your guilt or innocence on the charge.
Do you understand that?  And you could appeal this plea colloquy that I am going through right now.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  But other than the right to appeal from–

THE DEFENDANT:  Yes, sir.

THE COURT:  --from this plea and sentence that I will enter--

THE DEFENDANT:  Yes, sir.

THE COURT:  --you are not, you are waiving you right at this point to go to trial.  Do you understand that?

THE DEFENDANT:  Yes, sir.

(Doc. 34, Ex. I at 23-26) (emphasis added).

The state court record conclusively refutes Petitioner's claim that the trial court failed to advise him that he was waiving his right to a jury trial by pleading guilty.  Therefore, Petitioner failed to demonstrate that the trial court's colloquy was constitutionally deficient in this regard.

Likewise Petitioner has failed to demonstrate constitutional error with regard to the trial court's alleged failure to advise him of the mandatory minimum sentences he faced on each charge, including the 10-year minimum mandatory sentence for the home invasion robbery charge. Petitioner claims that the trial court failed to inform him of the mandatory minimum penalties "as mandated by Rule 3.172(C)(1)" (Doc. 14, attached memorandum at 6).  Respondent contends that Petitioner failed to present a federal constitutional claim because he asserts only a violation of a state procedural rule, not a federally protected right (Doc. 33 at 11-12).

In Petitioner's argument of this sub-issue in his amended habeas petition, he contends only that the trial court failed to fulfill the mandate of the state procedural rule (*see* Doc. 14, supporting memorandum at 6).  It is well established that federal habeas relief is available to correct only constitutional injury.  28 U.S.C. § 2254(a); Wainwright v. Goode, 464 U.S. 78, 104 S. Ct. 378, 78 L. Ed. 2d 187 (1983); Engle v. Isaac, 456 U.S. 107, 102 S. Ct. 2976, 73 L. Ed. 2d 1361 (1981); Sims v. Singletary, 155 F.3d 1297, 1312 (11th Cir. 1998).  Errors of state law which do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief.

However, in his reply to Respondent's answer, Petitioner cites his federal due process right to be informed of the nature of the charges and consequences of his plea before entering a guilty plea (*see* Doc. 38 at 4-7).  Liberally construing Petitioner's claim as alleging a violation of federal constitutional principles, he is not entitled to habeas relief.  As discussed *supra*, the Constitution requires that a defendant be informed regarding the range of punishment that he might receive. Pardue v. Burton, 26 F.3d 1093, 1096 (11th Cir. 1994) (citing Boykin, 395 U.S. at 241-42).  During

the plea colloquy, the trial judge advised Petitioner that according to the sentencing scoresheet, the range of sentence he could receive was forty-four (44) years to life (Doc. 34, Ex. I at 23).  Petitioner stated that he understood this penalty range (*id*.).  The trial judge asked Petitioner if he discussed his sentence exposure with his attorney, and Petitioner responded in the affirmative (*id*. at 26-29).  The judge asked Petitioner if he was aware that with a habitual felony offender sentence, the maximum penalty he could impose was life imprisonment with no chance of parole and possible ineligibility for early release, and that Petitioner may not be entitled to gain time or any other time off his sentence, and Petitioner responded that he was aware of those facts (*id*. at 28-29).  In these circumstances, where the recommended sentence of 44 years to life was well above the 10-year mandatory minimum, and where Petitioner was aware of the possibility of ineligibility for gain time or early release, there is no basis on which to conclude that Petitioner was totally ignorant of the outer limits of the penalty he faced or that his alleged ignorance of the 10-year mandatory minimum sentence affected his otherwise voluntary and intelligent decision to plead guilty.  *See* Bryant v. Cherry, 687 F.2d 48, 49-50 (4th Cir. 1982) (alleged ignorance of mandatory minimum sentence of seven years could not reasonably have affected petitioner's otherwise voluntary and intelligent decision to enter guilty plea where petitioner had entered into plea agreement with understanding that State would recommend two consecutive life sentences and during plea colloquy, and petitioner indicated his plea was voluntary and that he expected to receive two consecutive life sentences); Serrano v. United States, 442 F.2d 923, 925 (2d Cir. 1971) (alleged ignorance of five-year mandatory minimum sentence could not have affected petitioner's decision to plead guilty where defendant had pleaded guilty in exchange for Government's promise to recommend a prison sentence of seven years, since petitioner had no reason to expect sentence of less than seven years); *see also* Hill v. Estelle, 653 F.2d 202, 206 (5th Cir. 1981) ("In the context of a guilty plea with a recommended sentence well above the minimum under either statute [the old and new sentencing guidelines], when the minimum serves no limiting effect on Hill's parole eligibility, there is no basis on which to conclude that the difference between the two possible ranges of punishment would reasonably have had an effect on Hill's decision to plead guilty, and the voluntary, intelligent character of his guilty plea is thus not destroyed.").  Therefore, Petitioner has failed to demonstrate his entitlement to federal habeas relief.

In sum, the only two claims exhausted by Petitioner were his claims that the trial court failed to advise him that he was waiving his right to a jury trial and his claim that the court failed to advise him of his sentence exposure.  Petitioner has failed to demonstrate that those claims are meritorious, and any remaining sub-claims were not exhausted in the state courts.  Therefore, Petitioner is not entitled to relief.

     B.     <u>Ground two:  The trial court failed to conduct a hearing upon Lowery's competency to stand [sic].</u>

Petitioner alleges he was on psychotropic medication and was mentally incompetent at the time he entered his plea (Doc. 14 at 4).  He asserts that despite the trial court's knowledge of his mental condition and medications, based upon information provided by defense counsel and Petitioner during the plea hearing, the court accepted his plea (*id.*, attached memorandum at 7-8). Petitioner claims that the trial court violated his constitutional rights by failing to hold a hearing or otherwise ensure that Petitioner was mentally competent to enter a plea before the court accepted it (*id*. at 8).

     1.     Clearly Established Supreme Court Law

"The due process clause prohibits the trial or guilty plea conviction of a person who is mentally incompetent."  <u>Sheley v. Singletary</u>, 955 F.2d 1434 (11th Cir. 1992) (citations omitted). The standard for determining competency to plead is the same standard applied to determine competency to stand trial, i.e. whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of understanding--and whether he has a rational as well as factual understanding of the proceedings against him."  <u>Dusky v. United States</u>, 362 U.S. 402, 80 S. Ct. 788, 789, 4 L. Ed. 2d 824 (1960); <u>Stinson v. Wainwright</u>, 710 F.2d 743, 745 (11th Cir. 1983). Further:

> The burden on the petitioner seeking federal habeas relief on grounds of incompetency is heavy. . . . "Courts in habeas corpus proceedings should not consider claims of mental incompetence to stand trial where the facts are not sufficient to positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to the mental capacity of the petitioner."

<u>Sheley</u>, 955 F.2d at 1438 (quoting <u>Reese v. Wainwright</u>, 600 F.2d 1085, 1091 (5th Cir. 1979)).

A lifelong history of mental illness and emotional problems does not demonstrate incompetency without a specific showing of how these difficulties generated a substantial doubt as to petitioner's competency at the time in question.  Medina v. Singletary, 59 F.3d 1095, 1106 (11th Cir. 1995); Card v. Singletary, 981 F.2d 481 (11th Cir. 1992).  Similarly, the fact the accused is undergoing treatment with psychiatric drugs, while relevant, does not alone prove incompetence.  Sheley, 955 F.2d at 1438-39.  In order to establish incompetence, evidence must establish that the drugs affected the accused to the point that he could not effectively consult with his attorney and could not understand the proceedings.  Id. at 1439.  Furthermore, "[a] bare allegation of the level of psychotropic drugs administered to petitioner before entering his plea . . . is insufficient to meet this evidentiary threshold."  Id.   A habeas petitioner must point to information in the state court record, including information available both prior to and during the plea hearing or trial, that creates a reasonable doubt of his competence to stand trial.  See Drope v. Missouri, 420 U.S. 162, 179, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975); Pate v. Robinson, 383 U.S. 375, 385-86, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966).

2.      Federal Review of State Court Decision

Petitioner raised this claim in his Rule 3.850 motion (Doc. 34, Ex. I at 10, 14-15).  The post-conviction court found as fact that the trial court was in possession of Petitioner's mental health evaluation completed by Dr. Larson prior to accepting Petitioner's plea, and that the trial court inquired into Petitioner's mental state and competency during the plea colloquy (id. at 51).  The post-conviction court concluded that the record was devoid of any evidence that Petitioner was not competent to enter his plea (id. at 51-52).

The state court record contains a psychological evaluation conducted by James D. Larson, Ph.D., a licensed psychologist, on September 29, 2000 (Doc. 34, Ex. V).  Dr. Larson interviewed Petitioner and reviewed Petitioner's medical records at the jail, as well as Petitioner's 128-page statement to law enforcement officers and letters written by Petitioner to defense counsel and the trial judge (id. at 1).  Dr. Larson noted that the medical records indicated that Petitioner had been identified as suffering from Bipolar Disorder, for which he was being treated with Lithium and Pamelor (id. at 2).  Dr. Larson stated that Lithium was a mood stabilizing agent, and Pamelor was an antidepressant, and that the medications were commonly given together for individuals with

Petitioner's disorder (*id*.).  Dr. Larson observed no indications in the medical records of acute psychotic symptoms (*id*.).

Petitioner reported to Dr. Larson that he was diagnosed with Bipolar in 1992, eight years earlier, while incarcerated, and that he had also been temporarily involuntarily committed to an institution that same year (*id*.).  Petitioner reported that he was taking medication during his incarceration at that time, but did not continue the medication when he was released (*id*.).  He had not been taking medication until he was incarcerated again in the instant case (*id*.).  Petitioner also reported that he attempted to commit suicide in 1996, which resulted in his temporary involuntary commitment to a mental hospital (*id*. at 4).

Upon examining Petitioner, Dr. Larson observed that Petitioner was "well oriented to time, place, and person," that his hygiene and grooming were appropriate, and that his demeanor was appropriate and cooperative (*id*.).  Dr. Larson determined that Petitioner had no current signs or symptoms of psychosis, such as hallucinations, delusions, or a formal thought disorder (*id*.).  Petitioner's cognition and judgment were "well intact," and his insight into his mental function was "adequate" (*id*.).

On the issue of Petitioner's competency to proceed in the criminal case, Dr. Larson opined:

The Defendant is well aware of the charges against him and possible range of penalties.  The Defendant manifested an adequate understanding of the nature of the adversarial process.  That is, he was able to give adequate definitions to the various participants in the judicial process.  He understood the four pleas available to him, the role of plea bargaining, as well as the meaning of probation.  The Defendant was cooperative with me today, and he can assist in the preparation of his defense.  The Defendant's thought processes were coherent and relevant, and I see no difficulty in is capacity to testify relevantly.  Similarly, I believe the Defendant has the ability to manifest appropriate courtroom behavior.

The Defendant was evaluated relative to the criteria set forth in paragraphs 916.301 and 916.106(1), Florida Statutes and rule 3.210(B) and 916.106(1) Florida Rules of Criminal Procedure, in determining his competency to proceed.  Based on this evaluation it is my opinion that the Defendant is competent to proceed.  To be more specific, the Defenda

1.    Has the present ability to consult with his attorney with a reasonable degree of rational understanding; and
2.    Has a rational, as well as factual, understanding of the proceedings against him.

Furthermore, it is my opinion that the Defendant:

1.    <u>Has</u> the capacity to appreciate the charges against him;

2.    <u>Has</u> the capacity to appreciate the range and nature of possible penalties;

3.    <u>Has</u> the capacity to understand the nature of the legal process;

4.    <u>Has</u> the capacity to disclose to his attorney pertinent facts surrounding the alleged offense;

5.    <u>Has</u> the capacity to manifest appropriate courtroom behavior;

6.    <u>Has</u> the capacity to testify relevantly.

(*id*. at 4-5).

During the plea colloquy, the trial court questioned Petitioner regarding his present mental state as follows:

THE COURT:  Are you, you are currently on medication for bipolar?

THE DEFENDANT:  Yes, sir.

THE COURT:  Right.  Lithium and another medication?

THE DEFENDANT:  Yes, sir.

THE COURT:  And how are you now in that process?

THE DEFENDANT:  I'm doing all right.  I am still on my medication.  And I ain't, haven't took none in the last 24 hours.

THE COURT:  But are you okay?  And bipolar, you kind of come and go.  And you have been dealing with it awhile.

THE DEFENDANT:  Yes, sir.

THE COURT:  And you appear coherent, and I don't get any indication of you being in a manic or real depressed state.  Is that true?

THE DEFENDANT:  Yes, sir.

THE COURT:  As far as you know.

(Doc. 34, Ex. I at 22).  The trial then asked defense counsel whether he was satisfied that Petitioner understood the nature and consequences of the plea agreement, and counsel responded, "Yes, I am, Your Honor, by my conversations with him, by the letters that he has written to the court, and by the psychological report by Dr. Larson there is no doubt in my mind that he does." (*id*. at 33). Counsel subsequently argued that Petitioner's untreated Bipolar Disorder was one reason, among others, for the court's deviating downward from the sentencing guidelines (*id*. at 37-40).

Upon review of Petitioner's submissions and the state court record, the undersigned concludes that Petitioner has failed to identify any information that creates a reasonable doubt as to his competence to enter a plea.  In the absence of such information, Petitioner failed to show that the trial court's failure to hold a competency hearing violated his constitutional rights.  Therefore, he has failed to demonstrate that the state court decision was contrary to or an unreasonable application of Supreme Court law.

C.     Claim three:   State broke its plea agreement when the prosecutor recommended a specific sentence.

Petitioner next claims that the State breached the plea agreement by recommending a seventy-year sentence to the sentencing court (Doc. 14 at 5).  Petitioner states that the plea agreement provided that he would plead "straight up" in exchange for the prosecutor's agreement to not recommend a specific sentence (*id*.).[8]

1.     Clearly Established Supreme Court Law

The controlling law in the area of breach of plea agreements is Santobello v. New York in which the Supreme Court held, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  404 U.S. 257, 262, 92 S. Ct. 495, 499, 30 L. Ed. 2d 427 (1971).  In Santobello the government breached its plea bargain with the defendant when the prosecutor made

---

[8]Petitioner alleges that his counsel advised him that the State agreed to remain silent as to a sentence recommendation as a term of the plea agreement (Doc. 14, attached memorandum at 10).  The court construes this allegation as asserting a claim of ineffective assistance of counsel based upon counsel's erroneous advice as to the terms of the plea agreement, and the court will address the claim *infra* as part of the discussion of Petitioner's other ineffective assistance claims.

a sentencing recommendation despite a promise that it would make no recommendation.  404 U.S. at 259.  The Court held that the defendant was entitled to relief regardless of the fact that the sentencing judge stated he was "'not at all influenced'" by the prosecutor's recommendation.  *Id.*

> 2.     Federal Review of State Court Decision

Petitioner raised this claim in his Rule 3.850 motion (Doc. 34, Ex. I at 129-30).  The state court found as fact that the written plea agreement indicated that Petitioner would plead "straight up" to the charges and a sentence recommendation was not listed (*id*. at 157).  Additionally, the state court found that the transcript of the plea hearing showed that at the beginning of the plea hearing, defense counsel stated that Petitioner was aware that the prosecutor would be arguing for a habitual felony offender sentence, and the defense was prepared to argue against it at the hearing that day (*id*. at 157-58).  The state court found that these comments demonstrated that there was no deal between counsel and the State regarding a sentence recommendation (*id*. at 158).  The state court further found as fact that Petitioner was present when his counsel made that comment (*id*.).  Therefore, the court concluded that the record refuted Petitioner's contention (*id*.).

Petitioner has failed to rebut the state court's factual findings with clear and convincing evidence, therefore, the findings are presumed correct.  As the state court found, the written plea agreement stated that Petitioner would plead "straight up" to the charges and a sentence recommendation was not listed, meaning that the State and Petitioner had not agreed to any terms regarding entry of his plea or a sentencing recommendation (Doc. 34, Ex. I at 161).  The fact that there were no terms regarding a sentencing recommendation refutes Petitioner's claim that the State affirmatively agreed to remain silent as to a recommendation.  Because Petitioner failed to show that the plea agreement included a term that the State would remain silent as to a sentence recommendation, he failed to demonstrate that the State breached the agreement by recommending a sentence of seventy years.  Therefore, Petitioner has failed to establish that the state court decision was contrary to or an unreasonable application of Supreme Court law.

> D.     Ground four:   Ineffective assistance of counsel.

As his final claim, Petitioner raises four grounds of ineffective assistance of counsel:  (1) counsel represented Petitioner under a conflict of interest; (2) counsel failed to investigate witnesses both favorable and adverse to Petitioner; (3) counsel failed to investigate Petitioner's history of

mental illness; and (4) counsel failed to object to the prosecutor's sentence recommendation on the ground that it violated the terms of the plea agreement, (Doc. 14 at 5, attached memorandum at 11-16). Additionally, Petitioner contends that the cumulative effect of these errors deprived him of effective assistance of counsel (*id*. at 16-17). As discussed *supra*, the court construes the petition as also asserting a claim that counsel erroneously advised Petitioner that the State agreed to remain silent as to a sentence recommendation as a term of the plea agreement. For organizational purposes, the court has re-ordered Petitioner's claims.

   1. Clearly Established Supreme Court Law

  The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To obtain relief under Strickland, a petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 687-88. "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). If a petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. Strickland, 466 U.S. at 697. Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied. Turner v. Crosby, 339 F.3d 1247, 1279 (11th Cir. 2003), *cert. denied*, 541 U.S. 1034, 124 S. Ct. 2104, 158 L. Ed. 2d 718 (2004); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." (citation omitted)).

  The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances." Strickland, 466 U.S. at 688. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

To succeed on an ineffective assistance claim, Petitioner must rebut a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 690; *see also* Smith v. Singletary, 170 F.3d 1051, 1053 (11th Cir. 1999); Harich v. Dugger, 844 F.2d 1464, 1469 (11th Cir. 1988); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").   Indeed, Petitioner must demonstrate that counsel committed "serious derelictions" of his duty.   Stano v. Dugger, 921 F.2d 1125, 1150-51 (11th Cir. 1991).  "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam).  An attorney's responsibility is to investigate and to evaluate his client's options in the course of the subject legal proceedings and then to advise the client as to the merits of each.  Stano, 921 F.2d at 1152 (citations omitted).

The second prong of the Strickland analysis requires Petitioner to show that he was prejudiced as a result of counsel's deficient performance.  To satisfy this element, Petitioner must come forth with objective evidence showing a reasonable probability that but for counsel's errors, he would not have accepted the plea offer and would have insisted on going to trial.  Conclusory, after-the-fact statements do not meet this requirement.  *See* United States v. Gordon, 156 F.3d 376, 380-81 (2d Cir. 1998); Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991); Key v. United States, 806 F.2d 133, 139 (7th Cir. 1987); United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993).

2.      Federal Review of State Court Decision

a.      Failure to investigate witnesses

In his federal habeas petition, Petitioner claims that counsel was ineffective for failing to investigate the witnesses both favorable to him and against him, two of whom had "major inconsistencies in their statements" (Doc. 14 at 13).  Petitioner states he now has copies of signed affidavits from these witnesses stating they were lying and coerced into speaking against him (*id.*).  In his motion to file a supplemental brief and supplemental brief, Petitioner references an affidavit from Jason Owens, statements from Jowanna Campbell, Crystal Lenhart, Jamie Faircloth, and Jason

Owens, and letters to the state trial judge from Crystal Lenhart, Jason Owens, Paula Gil, and Brenda Pennington (*see* Doc. 13, Doc. 16 at ii).  Petitioner describes what the substance of each witness's testimony would now be, however, he did not submit affidavits or sworn statements from these witnesses (*id*. at 2-7).  Furthermore, Petitioner concedes that he did not present written statements from these witnesses or descriptions of their potential testimony to the state court (*see* Doc. 13; Doc. 16 at 2).

Respondent argues that Petitioner did not properly present this claim to the state courts because Petitioner did not identify to the state court the witnesses who defense counsel allegedly failed to investigate (Doc. 33 at 29).  Furthermore, any attempt by Petitioner to now exhaust the claim would be procedurally barred; therefore, Petitioner is not entitled to federal relief (*id*.).

To properly exhaust state court remedies, Petitioner must have fairly presented the substance of his federal claim to the state courts by raising "both the factual and legal premises of the claims for relief that are now being asserted in the federal habeas proceeding.  The state court must have been given a fair opportunity to apply controlling legal principles to the facts bearing upon the claim now being raised." Henderson v. Campbell, 353 F.3d 880, 898 n.25 (11th Cir. 2003) (citing Duncan, 513 U.S. at 365-66; Anderson, 459 U.S. at 6-8; Picard, 404 U.S. at 275-78); *see also* Williams v. Allen, 458 F.3d 1233, 1239 (11th Cir. 2006) (petitioner failed to fairly present to the state courts the issue of counsel's failure to read and review a specific report at the penalty phase where petitioner's claim of ineffectiveness at sentencing presented to state court related to counsel's failure to investigate and present sufficient mitigation evidence, albeit information that counsel allegedly could have gleaned from reading the specific report, but specific issue of counsel's failure to read and review specific report was never presented to state courts) (citation omitted); Brown v. Hooks, 176 Fed. Appx. 949, 953-54 (11th Cir. Apr. 18 2006) ("State remedies are not considered exhausted, even if the prior state proceedings asserted the same claim, when entirely new factual claims are made in support of the habeas petition before the court.") (citing Hart v. Estelle, 634 F.2d 987, 989 (5th Cir. Unit A Jan. 1981) (per curiam)).

In the state court proceedings in the instant case, Petitioner raised the following claim of ineffective assistance regarding counsel's failure to investigate witnesses:

> Counsel refused to investigate and to speak with the witnesses against petitioner, two
> of whom had major inconsistencies in their statements.  Petitioner now has copies
> of the signed affidavits that state they were lying and were coerced into speaking
> against petitioner.

(Doc. 34, Ex. I at 13).  In its written decision denying Petitioner's claim, the state court identified the two-prong Strickland standard as applicable to claims of ineffective assistance of counsel (*id*. at 48).  The state court found as fact that Petitioner did not attach the alleged affidavits to his Rule 3.850 motion, nor did he identify the substance of the witnesses' testimony (*id*. at 50-51).  Therefore, the court denied the claim as facially insufficient (*id*.).

Upon review of the record, the undersigned concludes that Petitioner failed to fairly present the instant claim to the state courts.  In the instant habeas action, Petitioner claims that his counsel was ineffective for failing to investigate and interview or depose six specific persons, namely, Jowanna Campbell, Crystal Lenhart, Jamie Faircloth, Jason Owens, Paula Gils, and Brenda Pennington (*see* Doc. 16).  However, Petitioner did not raise this factual premise in the state court; indeed, he failed to provide any factual support for his claim, and it was on this basis that the state court denied the claim.  Furthermore, although three or four of the witnesses he now identifies would be considered "witnesses against him," at least two of them would not be considered "witnesses against him" as Petitioner asserts they would have been "character witnesses" for him, a fact that Petitioner did not assert in his claim to the state court (*see* Doc. 16 at 2-7).  Because Petitioner did not raise the factual premise of his claim in the state court, the court concludes that the claim was not fairly presented and, therefore, was not exhausted.

As summarized in Bailey v. Nagle, 172 F.3d 1299 (11th Cir. 1999), a state habeas petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default, or that a fundamental miscarriage of justice will result.  Wainwright v. Sykes, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

To establish "cause" sufficient to overcome the procedural bar, Petitioner must show the existence of "an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim" which prevented him from raising the claim. McCleskey, 499 U.S. at 497 (quoting Murray, 477 U.S. at 488).  In order to show prejudice,

Petitioner must show not merely that the error created a possibility of prejudice, but that it worked to his actual and substantial disadvantage, infecting the entire proceeding with error of constitutional dimensions.  *See* United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 1596, 71 L. Ed. 2d 816 (1982).

In the instant case, Petitioner is now procedurally barred from raising his ineffective assistance claim in the state courts as his claim is properly raised in a Rule 3.850 motion, however, a second Rule 3.850 motion would be dismissed as successive, as discussed *supra*.  *See* Rule 3.850(a)(5), (f).  Moreover, Petitioner has failed to show cause for his failure to assert the factual basis for his claim in the state court.  Although he asserts that the documents necessary to support his claim were not previously available (*see* Doc. 13), the state court record shows that some of the documents identified by Petitioner in his supplemental brief to this court (*see* Doc. 16 at ii), specifically, letters to Judge Bell from Crystal Lenhart, Jason Owens, Paula Gil, and Brenda Pennington, were filed in the state court prior to Petitioner's entering his plea (*see* Doc. 34, Exs. N, P, Q) and, thus, were available to Petitioner at the time he filed his Rule 3.850 motion.  Additionally, the state court record shows that six months prior to entering his guilty plea, Petitioner filed a bar complaint against his attorney referencing counsel's failure to seek suppression of statements from two witnesses "with terrible credibility" (*see* Doc. 34, Ex. T), thus demonstrating that the factual basis for the claim was available to Petitioner well before he filed his Rule 3.850 motion.  Finally, Petitioner has failed to show he is entitled to review under the fundamental miscarriage of justice exception to the procedural bar.  Therefore, he is not entitled to federal habeas review of his claim.

### b.    Failure to investigate history of mental illness

Petitioner claims that his counsel performed ineffectively by failing to investigate Petitioner's mental state, including requesting funds to hire an independent expert to evaluate Petitioner's mental state at the time he committed the offenses (Doc. 14 at 15).

Petitioner raised this claim in his Rule 3.850 motion (Doc. 34, Ex. I at 13-14).  In the written decision denying Petitioner's claim, the state court found as fact that defense counsel requested and received appointment of a mental health expert to examine Petitioner's competency to stand trial and possible insanity at the time of commission of the offenses (*id*. at 51).  Additionally, Petitioner's defense attorney stated at the plea hearing that based upon his conversations with Petitioner and the

results of the psychological report that there was no doubt in his mind that Petitioner understood the consequences of the plea (*id*.).  Thus, the record refuted Petitioner's claim (*id*.).

The state court correctly identified the two-prong <u>Strickland</u> standard as applicable to claims of ineffective assistance of counsel (*id*. at 48-49).  Additionally, the state court's factual findings are presumed correct as Petitioner has failed to rebut those findings with clear and convincing evidence. Therefore, Petitioner is entitled to federal habeas relief only if he demonstrates that the state court decision was based upon an unreasonable application of <u>Strickland</u>.

The mental health expert appointed by the court at the request of defense counsel evaluated Petitioner's sanity at the time of the alleged offenses and determined the following:

> The Defendant was evaluated pursuant to Florida Standard Jury Instructions in Criminal Cases in determining the Defendant's sanity at the time of the alleged incident.
>
> The Defendant does not relate his alleged criminal conduct to signs or symptoms of his mental disorder such as hallucinations, delusions, or a formal though disorder. Instead, he references his drug habit and criminal motives.  In short, I have no reason to think the Defendant did not have the capacity to understand what he was doing, the consequences, nor the wrongfulness of his alleged conduct during the time frame of the alleged instances.  In short, in my opinion, the Defendant <u>would not</u> meet the criteria for insanity at the time of the alleged offenses.

(Doc. 34, Ex. V).  In light of this evaluation, it was not unreasonable for counsel to discontinue further investigation of an insanity defense.  Therefore, the state court decision denying this ineffective assistance claim was reasonable.

           c.    <u>Erroneously advising Petitioner regarding terms of plea agreement</u>

As discussed *supra*, the court liberally construes Petitioner's Ground Three as asserting a claim of ineffective of assistance of counsel based upon counsel's allegedly advising him that if he pleaded guilty, the prosecutor would be silent as to a sentence recommendation (Doc. 14 at 9-10). Petitioner states his counsel advised him that the terms of the plea agreement were as follows:  (1) Petitioner would plead "straight up," (2) the State would seek habitual offender status which could result in the trial court imposing a life sentence for a first degree felony, and (3) the prosecutor would be silent as to any sentence recommendation (*id*. at 10).  Petitioner states that counsel's

representation that the State would not recommend a specific sentence was the reason he entered a nolo contendere plea (*id.*).

The record refutes Petitioner's assertion that he pleaded guilty because of counsel's alleged promise that the State would not recommend a specific sentence.  As Petitioner points out, the section of the written plea agreement setting forth the terms of the agreement is titled,  "Terms of Plea Entry and Sentence Recommendation Agreed Upon by the State and Defendant."  (Doc. 34, Ex. A at 136 (emphasis added)).  The only words written in that section are "Straight up" (*id.*).  There is no indication that the State agreed to remain silent as to a sentence recommendation. Petitioner signed the agreement asserting that he understood all terms, conditions, obligations, and duties, and that each term, condition, obligation, and duty was explained to him by his attorney (*id.*). During the plea colloquy, Petitioner stated under oath that he read the plea agreement and discussed all of its terms with his counsel; that he understood all of the terms of the agreement; that the plea was "straight up"; that no representations had been made to him regarding his sentence except that the State would seek imposition of a habitual felony offender sentence, which would affect the possibility of early release; and that no one could guarantee the exact amount of time he would serve other than the fact that he would not serve in excess of the time to which he was sentenced (Doc. 34, Ex. A at 228-29, 235-36).  Furthermore, after the prosecutor made his sentencing recommendation, and defense counsel responded, Petitioner was given the opportunity to address the judge; however, Petitioner declined this perfect opportunity to clarify any misunderstanding regarding the terms of the plea agreement, or to even withdraw his plea (*id.* at 247-48).  Moreover, the record shows that Petitioner had expressed his desire to plead guilty to defense counsel and the trial judge at a suppression hearing in August of 2000, four months before Petitioner signed the plea agreement (*see* Doc. 34, Ex. A at 183-84).  Based upon these facts, Petitioner has failed to demonstrate a reasonable probability that he would have insisted on going to trial if counsel had not advised him that the State would be silent as to a sentence recommendation.  Therefore, he has failed to satisfy the prejudice prong of Strickland.

> d.      Failure to object to prosecutor's sentence recommendation on
>         the ground that it violated terms of plea agreement

Petitioner claims that his counsel was ineffective for failing to object to the prosecutors's sentence recommendation on the ground that it violated the plea agreement (Doc. 14 at 15-16). Petitioner raised this claim in his supplemental Rule 3.850 motion (Doc. 34, Ex. I at 131-32).  The state court denied the claim on the ground that the record established that there was no deal between the State and Petitioner regarding a sentence recommendation (*id*. at 158).

    In light of this court's previous determination that Petitioner failed to show that the plea agreement included a term that the State would remain silent as to a sentence recommendation, Petitioner has failed to establish that his counsel had a meritorious basis for objecting to the State's recommendation on the ground that the State's making a recommendation violated the terms of the agreement.  Counsel's failure to make meritless objections is not unreasonable; therefore, Petitioner failed to satisfy the deficient performance prong of the <u>Strickland</u> standard.  Accordingly, he is not entitled to federal habeas relief on this claim.

e.      <u>Conflict of interest</u>

Petitioner claims that his counsel labored under a conflict of interest in representing him. He states that defense counsel was married to a former district attorney who prosecuted Petitioner in the past (Doc. 14, attached memorandum at 13).  Additionally, defense counsel had a "major dispute" with Petitioner's mother when counsel's firm previously represented her in a civil matter (*id*.).  Petitioner states he was unaware of these conflicts prior to counsel's appointment to represent him, and if he had been aware of the conflicts, he would have sought different counsel (*id*.). Petitioner alleges that as a result of this conflict, counsel was "disloyal" in representing him and refused to investigate the witnesses against him (*id*.).

In <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980), the Supreme Court considered a claim of ineffective assistance of counsel in a case where defense counsel represented three co-defendants without objection.  446 U.S. at 337-38.  The Court held that to establish a constitutional violation, a defendant who did not object at trial must demonstrate "that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348.  The Supreme Court subsequently clarified in <u>Mickens v. Taylor</u>, 535 U.S. 162, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002), that "the <u>Sullivan</u> standard is not properly understood as requiring inquiry into actual conflict as something separate and apart from adverse effect.   An actual conflict for Sixth

Amendment purposes is a conflict of interest that adversely affects counsel's performance." 535 U.S. at 172 n.5. The <u>Sullivan</u>-mandated inquiry is therefore a one-part inquiry into the "adverse effect" of a conflict of interest. <u>Hunter v. Secretary, Dept. of Corrections</u>, 395 F.3d 1196, 1200 (11th Cir. 2005) (citing <u>Mickens</u>, 535 U.S. at 167-74).

Petitioner raised this claim in his Rule 3.850 motion (*see* Doc. 34, Ex. I at 13). The state court denied the claim on the ground that Petitioner failed to establish that the alleged conflict had an adverse effect upon counsel's performance (*id*. at 50). The court noted that although Petitioner asserted claims of ineffective assistance of counsel, all of his claims were either legally or facially insufficient (*id*.).

Petitioner has failed to show that defense counsel's performance was adversely affected by the alleged conflict. Although Petitioner alleges that the conflict was the basis for counsel's refusal to investigate the witnesses against him, Petitioner has failed to show that counsel's failure to interview the witnesses was unreasonable. The state court record shows that beginning in June of 2000, five months after defense counsel was appointed to represent Petitioner, defense counsel served subpoenas for depositions of twenty-one witnesses in Petitioner's case (*see* Doc. 34, Ex. N). In early August of 2000, Petitioner wrote a letter to the trial judge confessing to the crimes (Doc. 34, Ex. S). Additionally, on August 15, 2000, at a hearing on defense counsel's motion to suppress Petitioner's confession to law enforcement, Petitioner told his counsel and the trial court that he wished to plead guilty (Doc. 34, Ex. A at 183-84). The trial court denied the motion to suppress, therefore, Petitioner's confession to law enforcement would have been admissible at trial. Defense counsel issued three more subpoenas for depositions in October of 2000 (*see* Doc. 34, Ex. N). Petitioner wrote another letter to the trial judge in early December of 2000, expressing his desire to accept his punishment for the crimes he committed (Doc. 34, Exs. N, R). In light of counsel's discovery efforts, Petitioner's confessions to law enforcement and the trial judge, and Petitioner's early indication that he wished to plead guilty, it was reasonable for counsel to curtail further investigation. Petitioner has failed to show that counsel's performance was adversely affected by the alleged conflict of interest; therefore, the state court's denial of his claim was not contrary to or an unreasonable application of Supreme Court law.

f.       Cumulative errors

As his final claim, Petitioner asserts that the cumulative impact of counsel's errors deprived him of the right to a fundamentally fair trial (Doc. 14 at 16-17).  Petitioner raised his claim in his Rule 3.850 motion (Doc. 34, Ex. I at 13-14).  The state court denied his claim on the ground that each of Petitioner's claims of ineffective assistance was insufficient; therefore, his claim of a fundamentally unfair proceeding was without merit (*id.* at 51).

This court agrees.  As previously discussed, none of the alleged errors of trial counsel, considered alone, approach the threshold standard of ineffective assistance of counsel.  Taken together, their cumulative effect also falls far short of depriving Petitioner of effective assistance of counsel or of rendering Petitioner's criminal proceeding fundamentally unfair.  Therefore, Petitioner is not entitled to relief on his claim.  *See* Bronstein v. Wainwright, 646 F.2d 1048 (11th Cir. 1981) ("[A] state trial must be so 'fundamentally unfair' as to amount to a denial of due process before federal habeas relief can be appropriately applied.") (internal quotation and citation omitted).

Accordingly, it is respectfully **RECOMMENDED**:

That the amended petition for writ of habeas corpus (Doc. 14) be **DENIED**.

At Pensacola, Florida, this  25th  day of September 2006.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**